Good morning, and may it please the Court, my name is Colin Hawley with the law firm of Hampton Hawley LLP, appearing for Appellant JL Beverage Co. LLC. Your Honors, it's our view that genuine issues of fact permeate every aspect of this trademark dispute. I would ask the Court if there are any specific issues that you would like me to address before I start talking about some of the sleek craft factors. Well, this is a little heretical, but looking at sleek craft last night, I noticed that sleek craft says that the factors apply when the products are not in direct competition, but are only related. And these products are in direct competition, right? These products are in direct competition. But you're nonetheless agreeing that it's the sleek craft factors that apply. Well, Your Honor, I think the case law says that when the products are in direct competition, there are some factors that you perhaps give a lot less weight to. For instance, if you have two very similar marks on products that are directly competing, you look at similarity, you look at strength of the marks, and pretty much can make a determination. You don't have to kind of go into some of the other factors, which are designed to deal with products that are not in direct competition, like what are the marketing channels used and things like that. If you know you have directly competing products, you don't have to get into those kinds of factors because they're clear that they're on one side. And the second thing that I was curious about, since you asked, was is there any case – I mean, I understand that the lips are a separate mark. But is there any case – I mean, what we have here are – assuming the lips are somewhat similar, nothing else is particularly similar about the way these products look. And certainly the names aren't. Is there any case in which just a visual thing like that, without a name and without a sort of trade dress or anything else, is held to be sufficiently dispositive to demonstrate the likelihood of confusion? Your Honor, I don't know if there's anything very similar in terms of just an image like that. But the goto.com case, that's 202 Fed 3rd 1206, spoke very strongly to the point that what you have to consider is the overall commercial expression, the overall commercial impression that the mark gives the product. And here I'd like to give an example of the lips mark that a palant used was used very extensively on the many small bottles of vodka that are sold on airlines. And in particular, over a million of those little bottles were sold on Alaska Airlines. So that's a million, perhaps a few less, consumers who were exposed to these mini bottles that had each one as the overarching distinctive feature, that lip design in a particular color to match with the flavor of the vodka. There's nothing else particularly distinctive about those mini bottles. It's just a bottle. It's got a cap. It's got a label. Most of it is silver or white or black. But what's distinctive about each of those little bottles is the tilted, realistic lip design in the color that matches the flavor of the bottle. So a consumer, over a million consumers receive those bottles. If they enjoyed the vodka, what they would remember is that lip design. Then they go out into the market and they're faced with the Apelles product, which also has as the overall commercial impression the most distinct feature is the, again, a very similar colored lip design that matches the flavor of the vodka. So they're going to be confused as to whether that potentially came from the same source. The Apelles in their brief do go into an extensive breakdown of the dissimilarities between the two products in terms of the packaging. But, again, the Fortune Dynamics case, 618 Fed Third, 1025 at 1031, emphasized that the similarities must be weighed more heavily than the differences, and even more so in the case where we're talking about ruling on summary judgment. Your Honor, I would like to, I should have said this at the beginning, I would like to reserve seven minutes of my time. Were there any other particular factors you'd like me to address at this point? Why don't you address what you'd like to address? I mean, I gather that there is just a, the district court did not think that even the lips were all that similar. So I don't know if you want to address that or not. Yes, Your Honor. And the reality is it's obviously a very flexible, fluid test, the eight-factor test. The district court did focus primarily on similarity, and it seemed that the district court felt that because of the dissimilarity between the product packaging, that alone was enough to warrant summary judgment. At least that was the primary factor that the court seemed to consider. But, again, you have to look at the overall commercial impression, and for the reasons I've just talked about, a reasonable juror could certainly find that the two marks gave the respective products a similar commercial impression. And it doesn't have to be the same commercial impression. It just has to be a similar commercial impression. But you're essentially saying that one could look at these two products or, and despite all the differences between them, between the product packaging as a whole, conclude that there was some connection between them because of one feature on the label. Yes, Your Honor. Not just because of one feature. Because the predominant feature in both of the products, the only feature that is arbitrary or fanciful on both of the products is that lip design. So they have the company names on both of the products. They're certainly not exactly the same. I mean, their size is different. They're tilted in a different direction. They're tilted in the same direction, Your Honor. And I would say that they're tilted in the same direction. They're both very realistic depictions of a kiss or lips. And, again, the coloring matching the flavor of the bottle, I think, is a huge factor in giving it a very similar overall commercial impression. That seems to me to be right, but it wasn't mentioned anywhere. It was mentioned in your briefs. It was given very little emphasis. Which aspect? The color issue. The fact that the colors were, that they both used this color issue. What about the intent question? Your Honor, yes, Factor VII is the appellee's intent in selecting the mark. I'd like to make a couple points about that. First of all, and I want to emphasize, as we noted in our papers, that this case did involve claims of both forward and reverse confusion. So for purposes of a potential claim of reverse confusion, what the court need only look at is whether the appellees had constructive knowledge of appellant's use of the mark, which I don't think either party disputes. Clearly, Jail Beverage had the registrations in place before Beam adopted the mark. Clearly, Beam received a cease and desist letter at some point along the line, as well as receiving a rejection from the USPTO based in part on the fact that Jail Beverage had registered Omar with that lip design. So there clearly is constructive knowledge here. And for purposes of reverse confusion, you don't need to go to the extra question of was there bad faith intent in adoption. So Factor VII, for purposes of reverse confusion, should be in the column of Jail Beverage as the appellant. With respect to the bad faith issue when you're talking about forward confusion, there's evidence that there was an employee who was working on the Pucker line, albeit in the business and financial aspect of the line, who knew the owner of Jail Beverage, was aware of the Jail Beverage line of products during the time when Pucker adopted this mark. That, on top of the fact that they went forward with a massive rollout after they were aware of the Jail Beverage mark, could allow a reasonable juror to decide that the bad faith element also goes in Jail Beverage's column for purposes of forward confusion. With that, Your Honors, I'd like to reserve my last six minutes. Thank you. May it please the Court. Good morning, Your Honors. Mark Bliss, appearing on behalf of the defendants. Jim Beam-Brands and Beam-Suntory. Counsel, if you don't mind, there's an area that has not been touched upon by the appellate that bothers me somewhat, and that is the granting of summary judgment. We've made it clear in our cases that when we're involved in a case like this, and we're dealing with the Sleet-Criff Factories, that likelihood of confusion grounds is generally disfavored. So we start off with the fact that the district judge made a mistake in determining on summary judgment. And your brief itself talks about the district court found and the district court found. That seems to me is a wrong analysis for a summary judgment process. That's the second problem I have. And the third problem is the reasoning of the district judge. The district judge, in the determination of this case, and I'm reading from page nine of the opinion of the district court, however, his plaintiff is unlikely to succeed on the claims. Now, that was the motion that you won when they were asking for a preliminary injunction. It's not likely to succeed on the claims. The court cannot grant summary judgment in its favor. Well, that isn't the issue. The issue now should be, is there a material fact in dispute? So the district judge used the wrong test. And if that's true, why shouldn't we send it back, let the district judge follow the proper test, having in mind the presumption that we've said that this should go to trial and not be decided on summary judgment, and clear up that record. Now, that's the problem I have with the case. Now, I wanted to let you know at the beginning, because you're the one that can answer it for me. I'll try my best, Your Honor. Okay. I mean, the court does have, certainly, precedent that says, generally, summary judgment is to be avoided in trademark cases. In this area? In likelihood of confusion. The summary judgment on likelihood of confusion grounds is generally disfavored. And I think the key word there, Your Honor, is generally. That, you know, this Court, no court has ever said that Rule 56 does not apply to summary to like to. No, no, no. We just said that usually that is what you shouldn't do. And this Court has upheld summary judgment in a number of cases where likelihood of confusion were the case. For example, in the one industries case that we decided to rely on, that goes back to Judge Berzon's earlier question in Part 2. It says you must look at the marks as they appear in a whole. Yeah. We've allowed it. Right. But you come with a strike. You come with one strike. Okay. But let me say, there is no genuine issue of fact here what the marks look like. There's no genuine issue of fact what the bottles look like. There's no genuine issue of fact that we prominently use Pucker. There's no genuine issue of fact that they use Johnny Love. Well, why is your brief continually saying the district court found, the district court found, when the district court should have been saying it's a material issue? But, I mean, I think in any summary judgment ruling, I mean, this case was a little bit unusual because the court relied on the preliminary injunction in part. Yes. But then they filed a motion to, if you look at the actual order, she sets forth the standard of Anderson and Solitax. And then in their motion to reconsider, she clearly says we filed the summary judgment standard. We gave every reasonable inference to the nonmoving party. We do not see a fact that there is for trial. What fact needs to be tried in this case? Well, then, what do we do with her language in her order, in the district court's order? However, as the plaintiff is unlikely to succeed on his claims, the court cannot grant summary judgment in its favor. Well, in that case, Your Honor, the court, they had moved for summary judgment. That language is the district court addressing the plaintiff's motion. Right. She's saying we find no basis to grant their motion for summary judgment. But then she goes on to say we were very concerned. It says because they're unlikely to succeed. That's the language that came out of her prior ruling denying their preliminary injunction, which she refers to during her order. But they have not appealed. They had the opportunity to cross-appeal the denial of their summary judgment motion. That is not the issue before the court. No, the issue is, is there a material fact in dispute? And there isn't. And the district court goes on to say they are the plaintiff in the case, under Solitax and Anderson. They have the burden of persuasion. They have to go to the district court more than a scintilla of evidence in support of their claim. Well, isn't when you bring a motion for summary judgment, don't you have the material fact in dispute? We have two options, Your Honor. We can show there's no material fact in dispute, or we can show there's no evidence to support their case. Again, we don't have to disprove their case. We can say that they have the inability to prove their case. And in this case, there is no evidence to support the case. I mean, in the ---- But you relied upon apparently findings. You said several times in your briefing here, when I read it, I was somewhat surprised that you argue the district court found. The district court found, rather than the test, is there a material fact in dispute? And maybe you would take exception with our wording. But we ---- No, in analysis, not the wording, the analysis. But the district court found there was no genuine issue of fact. The third parties used the mark. In any event, if we thought there was a problem with this, summary judgment is a legal matter, and we could ---- what would be the point of remanding to the district court to do the summary judgment again? Because we would then review it de novo anyway. Correct. My view is the judgment should be affirmed. I understand. But in either event, it's a de novo question. It's absolutely de novo. If he ---- if they applied the wrong standard, then we should do it over applying the right standard. Yes. Again, I think, and I believe you have to look at the Court's order on the motion to reconsider, where she clearly says, I did apply the summary judgment. But it doesn't matter. Either way, it doesn't matter, because we're doing it de novo anyway. Fair enough. So go back to Your Honor's earlier question. I'm still, you know, really taken or confused about ---- I mean, maybe, you know, the world has moved on since Sleekcraft. But Sleekcraft says the following as clearly as he could say it. When the goods produced by the alleged infringer compete for sales with those of the trademark owner, infringement usually will be found if the marks are sufficiently similar that confusion can be expected. When the goods are related but not competitive, several other factors are added to the calculus. And then it concludes that the firm, the district court's finding that despite the potential market overlap, the two lines are not competitive. Accordingly, we must consider all the relevant circumstances in assessing the likelihood of confusion. And then it says, in determining whether confusion between related goods is likely, the following factors are relevant, and it lists them. Right? So this is a case, and I'm not sure there's another like it since Sleekcraft, where you have direct ---- I mean, is there any doubt that these products were directly competitive? From the purpose of this case, we can assume they're competitive, yes. So why are we running from the Sleekcraft factor? If I could try to answer, Your Honor. Okay. Since the Sleekcraft case, if you look at the more recent cases, one industry case, the survivor case, that goes ---- they all analyze the Sleekcraft factors and have applied it to competitive goods. The one industry case, there was motocross helmets versus motocross helmets. And the Court looked at all the different factors. The only factor ---- But it's sort of a waste of time, because many of them just sort of fall out. Well ---- Anyway, so it's ---- what it comes down to in the end is really whether the facts are sufficiently similar, the confusion can be expected, and nothing else. I mean, all the material about even the strength of the mark and the proximity of the goods obviously isn't relevant, and the marketing channels used isn't relevant, and I don't know why the degree of care is relevant. I'm not sure why any of this is relevant. And again, the more recent cases have applied the Sleekcraft factors. They actually, in this case, they ---- we agree that the expansion goods, expansion of markets factor in Sleekcraft was not relevant. But the more recent cases have applied the Sleekcraft factors test to competitive goods. So, again, if you look at the cases that we rely on, not to interrupt you, Judge Walz, but the one industry survivor case, they all look at the Sleekcraft factors, even though the products involved are competitive. So we look at the Sleekcraft factors, and apparently at least factor 2, 5, and 6 are found for the opposition. So you don't have a home run here where all of them are one way. And if those factors would be determined to get the ultimate, I don't see how summary judgment fits in. They already have three. Is there a material fact and dispute then on the Sleekcraft factors? Because they already have three. Why wouldn't we say that a jury has to make that determination? Because, Your Honor, in many cases in this circuit, including the one industry case that we rely on in the brief, a number of factors can go both ways and summary judgment still be appropriate. In the M2 case cited by the district court and in our briefs, the court said typically in the competitive goods arena, the critical factor is the similarity of the marks. In one industry, they relied on that to say, even though they were both old designs, they were both used on motocross helmets, this court affirmed summary judgment of non-infringement, finding that the critical factor was the marks were not confusingly similar. But then what do we do with the analysis that she ties it back into the denial of the preliminary injunction as the reasons why she finds summary judgment as appropriate? She, again, under Anderson and Solitex, they, I mean, under Anderson and Solitex, the plaintiff had the burden to come forward with a triable fact. And just saying that three factors are on one side and three are, as the judge, as the court found in Reardon, a case they rely on, you don't count means. You don't count the factors. And the critical factors in directly competitive goods would be similarity of the mark. That's typically the single most important. But the mark, my assumption is the mark we're talking about now is the lips, not the Johnny Love. Vodka mark. Vodka, right? So then what happens? Suppose we thought the lips were pretty similar to each other. And we then retreat and look at the whole presentation even though the lips are the trademark? Absolutely, Your Honor. Every trademark case that I know of says you have to look at use of house marks, you have to look at the packaging, the labeling, the fonts. You have to look in this case, as Your Honor alluded to, the bottles are completely different, the caps are different. Again, look at the one industry case. The placement of the O on the motocross helmets were different. Here the placements are different. Their lips alone, if you look at the record, it looks like a little blotch on the top of them. To me, actually, as I said before, it's stressed very little, but the fact that you're using the lips and coloring them differently for different flavors does seem to me to be, I mean, not just the lips, but the lips in different colors. Now, I don't know if that's part of the mark or not, but it does seem. Well, they didn't register the color, so it's not part of their registered mark. But it's part of the way they're using it and part of the way you're using it, and that seems to me. We both only use the color green. We use different greens. Yeah, but what you're doing is using the color of, to demonstrate, the color of the lips to demonstrate the flavor. In that case, the color would be just a descriptive decorative lip. Using green for green apples for a flavored apple would not be an unusual. But again, Your Honor, you have to look at the products, the packaging as a whole. And the test isn't to compare. But people change. I mean, for example, Coke appears on their big bottles and their glass bottles, their plastic bottles, their cans. It's still Coke. Right. And somebody looking at it would say, well, it's a completely different bottle, but it's still Coke. Right. But in this case, that's Coca-Cola that uses it and has a famous name. Here you have lips that are barely legible on the top of the bottle. You have lips that are on the back of the bottle. The lips themselves are different, quite different. We don't use it on the back. We don't use it on the top. So – oh, I'm sorry. Can I have one minute? You can have – all right, one minute. Go ahead. I just want to say one thing on the intent issue, and I'll sit down, is that in this case it's very – what happened in the trademark office was the trademark, we filed to register the lips. Oh, I understand that. But why aren't they right as to reverse? Because we use lips first. We got a trademark search report that had over 40 records. We had been using lips on flavored liqueurs. But not looking anything like this. And the only mark that came up in the search report was a Johnny Love Vodka mark. They had not applied for the lips standing alone at that time. So there was no reason – we saw Johnny Love Vodka and we saw 40 other lips. There was nothing unusual about Johnny Love Vodka, you know, with the whole words Johnny Love Vodka. The time we did our search, their application for the lips standing alone didn't exist. So there was nothing there for us to see, to have knowledge of. But is that the critical timing? Pardon? Is that the critical timing? In other words, eventually you did know, and eventually you – I mean, not very eventually. Pretty soon you didn't know. No. We knew after we had committed to launch, after we had millions of bottles in the pipeline and we had announced it in distributors. I mean, we don't think there's anything confusingly similar. Just because the fact that you get a letter doesn't mean you have to destroy millions of dollars. That doesn't have an intent. I see. I mean, there's no – you know, again, in a reverse confusion case, you know, this is an odd case, as the district court correctly said, because we used lips first. So if the marketplace associates lips with the Pucker brand, we had over 30 million bottles at this time of Pucker-flavored liqueurs using lips in the marketplace. So reverse confusion I don't think applies when we use lips with Pucker on flavored liquor products first. Okay. Thank you very much. Thank you again, Your Honors. I want to note, Your Honors, again, the issue is, especially as to the similarity of the marks, which I think all the parties in the district court agree is a crucial factor, if not the most crucial factor, the fact that Your Honors is considering whether maybe the lips being so similar and the colors of the lips matching the flavors of the bottle, does that maybe make the marks sufficiently similar? That shows that a reasonable juror could go that direction as well. And that's what we're talking about. We're not talking about let's look at all the evidence, let's weigh it, and let's come to a decision. Because that's not appropriate. Well, does it matter that you have no evidence, as far as I know? I mean, you have all this intent evidence – or not intent, but supposed actual confusion evidence, but it's very limited to one guy in North Carolina, and there's some dubiousness about where he got this stuff from. But leaving that aside, don't you need people to at least say what you said? You said it fairly convincingly, but it's not in the record, that if I were looking at this bottle, what I would focus on were those lips. No, Your Honor. When you're analyzing the similarity of the marks, you don't need to produce empirical evidence from customers. You could. If there's a survey done, you could certainly use that evidence, but that's not required. I don't know how I, as a judge, am supposed to decide, never having bought or seen this product, whether I would – just off the top, it seems more logical that I would think that – or a jury – that the bottle and the label and the name and so on would clue me in, that these were just two companies that used lips. Right, Your Honor. And the point is that, generally speaking, and except in very rare cases, the Court is not supposed to decide. It's supposed to allow the parties to present all the evidence to a jury. I understand. But the jurors are in no better position, are they? On that question, without hearing somebody who actually saw the product and made some judgment about it. What the cases tell us is because the test is so flexible and requires – differing minds may differ when they see the two products as they're displayed. Is the overall commercial impression similar? I mean, reasonable minds may differ, but that's why it's supposed to go to a jury. One person here, the judge, decided no. But there's evidence, including the color of the marks, the shape of the marks, the fact that it's very realistic lips. A reasonable juror certainly could decide that these marks, as used in commerce, are sufficiently similar. What about the reverse – the intent and reverse confusion question? Your opponent says that, in fact, they didn't know at the relevant time of the lips mark as a protection mark. Two things, Your Honor. One, and I actually would take issue with one thing Your Honor said, in that the mark where the lips are within the Johnny Love vodka have the words as well, is not really what we're comparing in terms of similarity. I think we are comparing both the lips standing alone and the lips with the Johnny Love vodka, because if you look at the Johnny Love mark, the lips are seven times the size of the text. The words are much less – No, I understand that. Okay. What I meant was you're not looking at the Johnny Love mark as a mark. I'm not saying you're not looking at the lips that are in the Johnny Love mark. Right. But my point is that that Johnny Love vodka mark with the lips was being used way back in 2004, 2005. So when they found that, they did find that mark when they did their initial searching. So your point is it doesn't matter whether it was registered. The point is they knew about – No, no. That mark was registered with the big lips and the very small text with the Johnny Love vodka. So they saw that way back in their first searching. But also, would it matter if it was registered, if they knew about the – The standalone? Yeah, they knew it was there. It wouldn't matter. The issue is whether they knew that somebody was using it in commerce. I mean, it could get into issues of whether they had a concern about common law rights versus registered rights, but that's a complexity I don't think we've dealt with here. But I would say, with respect to the reverse confusion point, Opposing Counsel references the De Kuyper, the predecessor to being used lips for a long time going back with liquors, liqueurs, totally different mark. That was a cartoonish lip mark that has no similarity whatsoever to the two we're talking about here. It's not the tilted, very realistic lips that we're talking about in this case that are at a very similar slant. And again, the colors match up with the flavor. So it's not like they carved out some kind of rights to use the marks we're talking about here today decades ago. No one's argued that, and that's not the case. Your Honor, do I have any other questions? Judge Noonan? Oh, is Judge Noonan not here? Say it again, Judge. Judge Noonan? No questions. No questions? No questions. Okay. Thank you very much. Thank you, Your Honor. The case of Chayle Beverage v. Jim Beam Brands is submitted, and we go to the last case of the day, Bagley v. Bel Air Mechanical.
judges: Wallace, Noonan, Berzon